United States District Court for the District of Columbia

| | | |
|---|---|---|
| SEPHERIA SPRATTLEY, an individual,<br>329 Meadow Way<br>Landover, Maryland  20785<br><br>     Plaintiff,<br><br>     v.<br><br>UNION RIGHTS FOR SECURITY WORKERS,<br>a Labor Organization<br>8751 Greenbelt Rd., Suite 101<br>Greenbelt, Maryland 20770<br><br>  SERVE:<br><br>  Kim Gladden, President<br>  8751 Greenbelt Rd., Suite 101<br>  Greenbelt, Maryland 20770<br><br>    and<br><br>MASTER SECURITY COMPANY, LLC<br>10946 D Beaver Dam Rd.<br>Hunt Valley, Maryland  21030<br><br>  SERVE:<br><br>  C. T. CORPORATION SYSTEM<br>  Registered Agent<br>  1015 15th St NW Suite 1000<br>  Washington DC  20005<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 2015-CV-0857 |

**COMPLAINT FOR BREACH OF THE DUTY OF**
**FAIR REPRESENTATION, BREACH OF CONTRACT**

 PLAINTIFF, SEPHERIA SPRATTLEY, by her attorney undersigned, alleges:

 1. This is an action for breach of a labor organization's duty of fair representation, including violations of the Labor Management Relations Act, 29 U.S.C. §§158 and 185, and for breach of collective bargaining agreement.

1

**Jurisdiction and Venue**

2. This Court has jurisdiction over the claims herein pursuant to the Labor Management Relations Act, 29 U.S.C. §185, 28 U.S.C. §1337, and 28 U.S.C. §1331. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) because all of the circumstances giving rise to the claims occurred within this district.

**Parties**

3. Plaintiff is an individual, residing in Landover, Maryland. At all relevant times until her termination, as alleged below, Plaintiff was employed as a private security guard by MASTER SECURITY COMPANY, LLC ("Master"). Plaintiff's worksite was the U.S. Department of Health and Human Services, 200 Independence Avenue, S.W., Washington, D.C. ("Worksite"), for which Master held a contract with the Federal Protective Service and/or the United States government to provide private security guard services.

4. Defendant MASTER SECURITY COMPANY, LLC was, at all relevant times, a limited liability company organized under the laws of the State of Maryland, and doing business in the District of Columbia.

5. Defendant UNION RIGHTS FOR SECURITY WORKERS ("Union") is a labor organization with its principal offices located at 8751 Greenbelt Rd., Suite 101, Greenbelt, Maryland. Kim Gladden has been President of the Union at all relevant times since 2010. At all relevant times, Union was the exclusive bargaining representative of police and security employees of Master at the Worksite, including Plaintiff. At all relevant times, Plaintiff was a member in good standing of Union, and entitled to all of the benefits of Union representation.

6. Union had the duty to represent Plaintiff as her labor representative, including the duty of fair representation, and other duties under federal law, the collective bargaining agreement, and the Union constitution, by-laws, and custom and practice.

**Facts**

7. Plaintiff has worked for Master, substantially on a full time basis, for approximately seven (7) years. During that time, she has received at least satisfactory performance reviews. As of December, 2014, Plaintiff was not employed at will, but was entitled not to be terminated or disciplined without "just cause," and subject to the procedures of the Collective Bargaining Agreement between Master and Union, including a progressive discipline policy.

8. Master's compensation and benefit policies permit employees to receive, among other things, cash in lieu of unused vacation. Plaintiff, at various times, requested cash in lieu of unused vacation. On information and belief, some of the unused vacation calculated by Plaintiff differed from the unused vacation reflected in Master's records for Plaintiff. Plaintiff lacks sufficient information to allege whether Master's records were correct, but, on several occasions, Master's Vice President for its government contracting division requested that Plaintiff repay alleged overpayments for unused vacation, and Plaintiff complied.

9. Master's written employment policies at all relevant times directed employees to resolve all matters of compensation with a "supervisor." Plaintiff generally made any repayments to the Vice President, who was a supervisor to whom she reported for personnel matters.

10. Plaintiff has repaid all monies, and done all other things, required by her employment relationship with Master.

11. On or about December 8, 2014, representatives of Master asserted that Plaintiff had knowingly requested cash in lieu of vacation greater than that to which she was entitled on multiple occasions, and failed to repay the company. On this basis, by letter of December

10, 2014, Master terminated Plaintiff's employment; the letter purported to terminate the employment "effective midnight December 9, 2014."

12. Shortly before Plaintiff's termination, Master charged its Vice President for government contracting with misappropriation of funds, consisting mainly of firing range fees (relating to service weapons) collected in cash from other employees.  Master also charged the Vice President with a variety of other forms of mismanagement.  On information and belief, Master did not charge the Vice President with any type of scheme, practice or pattern of collecting and retaining reimbursements of compensation overpayments from employees.  As of the last time that Plaintiff repaid any compensation at the request of the Vice President, Plaintiff had no knowledge of any allegations that the Vice President was misappropriating Master's money or property.

13.  On information and belief, Master had no reasonable basis in fact for terminating Plaintiff's employment.  Master had no basis to believe that Plaintiff had knowingly requested more pay in lieu of vacation than she was entitled to; that Plaintiff had not complied with all requests by the Vice President for reimbursement of amounts allegedly paid in error; or that Plaintiff had any reason to suspect that the Vice President might have misappropriated monies entrusted to her as an agent of Master, or committed any other acts of mismanagement.

14.  Before Plaintiff's employment was terminated, Union submitted a written grievance to Master.  This grievance failed to comply with the terms of the CBA, in that it was submitted before the termination, and that it contained no reference to arbitration, or any of the required documents or information for an arbitration demand, except for the words "step 3."  Grievances were required by the CBA to be submitted after the event complained of, and grievances involving discharge were required to be submitted at Step 3 of the

grievance process. The CBA provided that "the time limits for filing and referring grievances to the next step or to arbitration are . . . strictly construed."

15. On or about March 26, 2015, Union wrote to representatives of Master, purporting to submit (by electronic mail) a "Request for Arbitration," saying, in pertinent part:

> "It was the URSO union's hope that we could meet and resolve the grievances in the Sepheria Sprattley case (Grievances 2014 12081 and 201412082. The union submitted request to discuss these matters your attention which has gone unanswered. The Union has done its due diligence in waiting for an response from your office. At this time, it is the Union's request that we proceed to Step 4 Arbitration. Attached you will find a standard the FMCS request form as required per the Collective Bargaining Agreement."

This "request" was submitted more than 100 days after Plaintiff's termination, making it between 80 and 95 days delinquent. Although the "request" was apparently intended to correct fatal errors in the initial grievance document, it failed to comply with substantial requirements for requesting arbitration, including that it failed to request arbitration, failed to include the required Federal Mediation and Conciliation Service forms, and failed to nominate a panel of proposed arbitrators. Predictably, it was rejected by Master.

16. The Union official responsible for these actions had held the position of President of the Union at all relevant times since 2010. Although the Union at some point had a relationship with legal counsel, on information and belief, the Union had no legal counsel at the time of Plaintiff's termination, or at any time through April, 2015. On information and belief, the Union President had little experience processing grievances, and no experience processing requests for arbitration, or representing employees in arbitration. On information and belief, the Union President was fully aware of her lack of experience, her lack of legal training or knowledge, and that she required legal counsel to assist her in carrying out the Union's duties of fair representation of its members. In purporting to process the grievance

5

described above, the Union President failed to follow the express language of the CBA which provided that "grievances which involve the discharge or suspension of an employee . . . shall be presented at Step 3 within five (5) work days [sic] the event giving rise to the grievance. . . ." She failed to comply with the time limitations for a Step 3 grievance, in that all grievances were required to be filed within five (5) days following the event complained of. She failed to complete or provide the required documents to initiate arbitration at step 3 of the grievance process. For these reasons, she sent electronic mail to Master in late March, purporting to correct the deficiencies in her initial grievance papers, and later instructed Plaintiff to take unnecessary and inappropriate steps to represent herself in the grievance process for the purpose, on information and belief, of avoiding responsibility for her failure properly to process the grievance. In sum, Union's failure to process Plaintiff's grievance constituted an intentional, or grossly negligent, failure to comply with clear duties and requirements of the CBA, and thus constituted a breach of the duty of fair representation owed by Union to Plaintiff.

17. As a result of her termination in violation of the CBA, and the Union's breach of its duty of fair representation, Plaintiff has been substantially unemployed for a period of at least five months, and suffered a loss of benefits and seniority, and has an unjustified allegation of misconduct on her otherwise good record of employment. On information and belief, the reasons documented by Master for Plaintiff's termination have obstructed Plaintiff's efforts to secure employment or to advance in employment, and will continue to do so for many years.

**Count 1**
Breach of Contract

18. Plaintiff refers to and incorporates by reference the allegations of paragraphs 1 through 17 as though fully set forth here.

19. By terminating the Plaintiff without good cause, or justification, or a reasonable basis in fact, Master violated Plaintiff's rights to continued employment, compensation, and benefits under the Collective Bargaining Agreement.

20. By documenting Plaintiff's termination involving misconduct, Master has falsely and unjustifiably obstructed and prevented Plaintiff from securing employment in her field, and/or from advancing in employment.

21. Plaintiff is entitled to be reinstated to her position with Master; to an award of back pay, lost benefits, and restoration of seniority, from the date of her termination; to expungement of the termination and the negative reasons given for the termination from her record of employment; to reasonable attorneys' fees and costs of suit; and other relief.

**Count 2**
Breach of Duty of Fair Representation

22. Plaintiff refers to and incorporates by reference the allegations of paragraphs 1 through 21 as though fully set forth here.

23. The Union breached its duty of fair representation to plaintiff as alleged above, specifically in paragraphs 14-16.

24. Plaintiff has made repeated and consistent demands upon the Union to honor its duties of representation, and to provide Plaintiff with information concerning her grievance. Union has not complied, or delayed in complying, such that no remedy was available to Plaintiff under the Union's governing documents, the CBA, or other provisions of law. Plaintiff therefore has exhausted all possible administrative remedies relating to the relief she seeks in this action, or is excused by Union's obstruction, or futility, from any duty she may have had to exhaust administrative remedies.

25. Plaintiff is entitled to an award of damages against Union for loss of earnings, benefits and seniority, past and future, reasonable attorneys' fees and costs of suit; and other relief.

WHEREFORE, Plaintiff prays:

1. For judgment against Master for breach of contract, including reinstatement, back pay and loss of benefits;

2. For a mandatory injunction that Master expunge Plaintiff's termination, and an reference to alleged misconduct, from Plaintiff's record of employment;

3. For damages against Union for breach of the duty of fair representation, including damages for loss of pay and benefits, past and future;

4. For reasonable attorneys' fees and costs of suit; and

5. For such further relief as the Court deems just and proper.

Respectfully submitted,

Karr & Allison, P.C.

_____
Theodore S. Allison (D.C. Bar #441089)
Karr & Allison, P.C.
1250 Connecticut Ave., N.W., Suite 200
Washington, D.C. 20036
Telephone (202) 331-7600

Attorneys for Plaintiff

**Demand for Jury Trial**

Plaintiff respectfully requests a trial by jury on all claims stated herein which by law may be tried to a jury, pursuant to the laws of the Constitution and laws of the United States.

Respectfully submitted,

Karr & Allison, P.C.

_____
Theodore S. Allison (D.C. Bar #441089)
Karr & Allison, P.C.
1250 Connecticut Ave., N.W., Suite 200
Washington, D.C. 20036
Telephone (202) 331-7600

Attorneys for Plaintiff